# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANY M. IKPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00788-DGK |
| | ) | |
| ARAMARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO DISMISS

This lawsuit arises out of Defendant Aramark's ("Aramark") termination of Plaintiff Stephany Ikpe's employment and its enforcement of a no-hire provision. Now before the Court is Aramark's motion to dismiss Count II of Plaintiff's complaint, seeking relief for tortious interference with business expectancy. ECF 20. The motion is DENIED.

## Background

Viewed in the light most favorable to Plaintiff, the facts relevant to the pending motion are as follows. Plaintiff is a dietician who works in the food-services industry primarily in schools and hospitals. From March 2014 to December 2016, and again from 2017 to December 2019, Plaintiff worked for Morrison Healthcare ("Morrison"), a food-service vendor who directly competes with Aramark. Plaintiff was Morrison's Associate Director of Patient Services at Truman Medical Center's Hospital Hill campus. In November 2019, while employed in this role by Morrison, Aramark reached out to Plaintiff to gauge her interest in a position as its Patient Services Director at the Adele Hall Campus of Children's Mercy Hospital ("CMH").

This position fell under a ten-year contract between Aramark and CMH. Aramark was contracted with CMH to manage the operation of CMH's food and nutrition program. That

contract also included a no-hire provision. This provision prevented salaried employees from working at any CMH facility either directly or indirectly (e.g., through a competitor like Morrison) for one year post-employment. Plaintiff was unaware of this provision at the time she was hired.

In November 2019, around the time Aramark contacted Plaintiff, relations between Aramark and CMH began to fall apart. CMH had already notified Aramark that it was unsatisfied with Aramark's performance and had provided formal notice of material breach. Nevertheless, Aramark asked Plaintiff to fill out an employment application and interview for the director position which fell under the troubled CMH contract. At no time did any Aramark employee inform Plaintiff of the issues it had been having in fulfilling the contract.

During the interview process, Plaintiff made it clear to Aramark she was leaving Morrison because she saw the Aramark position as an upward move in her career. Aramark offered her the Patient Services Director position, and Plaintiff accepted. She left Morrison on December 31, 2019, on good terms, and started at Aramark January 1, 2020. Morrison filled Plaintiff's former position at Truman Medical Center by mid-January 2020.

On March 11, 2020, Plaintiff learned that CMH was replacing Aramark as its food services vendor, effective May 15, 2020. She also learned Morrison would be the new vendor. Upon learning this, Plaintiff reached out to her former Morrison manager, seeking to be rehired and continue on as the director at CMH. It was at this point that Plaintiff learned of the no-hire provision. The Morrison manager claimed that if it wasn't for the provision, she would have been welcomed back. Plaintiff did not apply for the Morrison Patient Services Director position at CMH, believing she was ineligible under the no-hire provision in the Aramark-CMH contract.

Aramark terminated Plaintiff's employment on May 9, 2020, and it did not offer her another position. After approximately three months of unemployment, Plaintiff started a new

position in the Kansas City area as a Nutrition Program Manager on August 31, 2020. This position offered a lower salary than what Plaintiff reasonably expected to make had she been employed with Morrison.

**Standard**

A court may dismiss a claim for relief if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court construes it liberally and draws all reasonable inferences from the facts in the non-moving party's favor. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). Mere threadbare recitals of the elements of a cause of action or "naked assertions devoid of further factual enhancement" do not meet the Rule 12 pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

**Analysis**

Missouri law allows a claim for tortious interference with a business expectancy when a plaintiff can show: (1) a valid business expectancy, (2) defendant's knowledge of the relationship, (3) a breach of the business expectancy caused or induced by defendant's intentional interference, (4) an absence of justification, and (5) damages. *Wash Sols., Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 895 (8th Cir. 2005) (citation omitted). The parties do not dispute that if Plaintiff can establish the first four elements, she has a claim for damages.

**I.    Plaintiff adequately alleges a valid business expectancy.**

A business expectancy is a "probable future business relationship that gives rise to a reasonable expectancy of financial benefit." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 251 (Mo. 2006). While a "mere hope of establishing a business relationship" is not sufficient to

satisfy this requirement, *Wash Sols., Inc.*, 395 F.3d at 895 (quoting *Serv. Vending Co. v. Wal-Mart Stores*, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)), the expectancy does not need to be established in fact.  A "regular course of prior dealings" is sufficient to suggest the validity of a business expectancy.  *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012) (citation omitted).

Considering the facts in the light most favorable to Plaintiff, the Court finds she has adequately pleaded a reasonable expectation of a business expectancy in post-Aramark employment at Morrison.  Her expectation of being hired by Morrison was more than a mere hope.  Aramark initially reached out to Plaintiff while she was working at Morrison.  Plaintiff only left Morrison to pursue what she saw as an upward move in her career, and no facts suggest she left on bad terms with the company.  When informed Aramark was terminating her position, Plaintiff had been at Aramark for less than six months, after having been employed by Morrison for over three years.  Plaintiff reached out to Morrison, and her former manager said she would be welcomed back but for the no-hire provision in the CMH contract.  Finally, the position Morrison was looking to fill was the exact position Plaintiff had just taken on at Aramark.  Thus, her continued work would help create a smooth transition.

These facts and circumstances show Plaintiff's former employment with Morrison create a sufficient course of prior dealings constituting a plausible claim for relief.

### II. Plaintiff makes a plausible showing of Aramark's knowledge of her business expectancy.

A plaintiff does not need to show a defendant's "actual" knowledge of a business expectancy, *Robb v. Bond Purchase, LLC*, 580 S.W.3d 70, 85 (Mo. Ct. App. 2019), as a defendant's "knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the business expectancy and [plaintiff's] interest in it" can establish this element.  *Id*. (quoting *Howard v. Youngman*, 81 S.W.3d 101, 113 (Mo. Ct. App. 2002)).

Plaintiff makes a plausible claim as to Aramark's knowledge of her business expectancy with Morrison. When Aramark hired Plaintiff, she was working for Morrison, and, at a minimum, the employment application and interview process would have revealed that information. Upon notification of termination with no promises of continued employment, Plaintiff sought to maintain her role at CMH, albeit with a different employer. Aramark failed to inform Plaintiff that its contract with CMH contained a no-hire provision until after it told her that her position was being terminated. These facts and circumstances would lead a reasonable person to believe Plaintiff had an interest in employment with Morrison upon Aramark's termination.

Thus, Plaintiff has adequately shown Aramark knew of her business expectancy with Morrison.

### III. Plaintiff adequately shows Aramark caused a breach of Plaintiff's business expectancy through intentional interference.

The causation element of Plaintiff's claim requires her to show Aramark took active and affirmative steps to induce a breach of her expectancy. *Francisco v. KC Star Co.*, 629 S.W.2d 524, 530 (Mo. Ct. App. 1981).[1] This element requires that an actor "desires to cause [the] consequences of [its] act, or that [it] believes that the consequences are substantially certain to result from it." *Id.* (citing Restatement (Second) of Torts § 8A (1965)).

Plaintiff argues that had Aramark not enforced the restrictive covenant, she would have been rehired at Morrison. Construing the facts in the light most favorable to Plaintiff, Aramark's enforcement of the no-hire provision caused the breach in Plaintiff's employment at Morrison. Plaintiff's former Morrison manager indicated that were it not for the no-hire provision, Plaintiff

---

[1] Aramark focuses exclusively on its failure to take any affirmative action, emphasizing Plaintiff's lack of a valid business expectancy. The Court notes a better test argument may be made using *Hensen v. Truman Med. Ctr, Inc.*, 62 S.W.2d 524, 530 (Mo. Ct. App. 1981), but Aramark fails to make this argument and the Court will not do so for it. *See, e.g.*, *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived." (citations omitted)).

would have been welcomed back. Were it not for the no-hire provision, it is plausible that Plaintiff would have received an offer at Morrison, and her failure to receive the offer was caused by Aramark's enforcement of the no-hire provision. Aramark also clearly acted with intent—its enforcement of the no-hire provision was meant to prevent competitors from hiring former Aramark salaried employees.

Plaintiff plausibly establishes Aramark intentionally interfered with her business expectancy, causing a breach.

### IV. Plaintiff plausibly alleges Aramark had no adequate justification to enforce the restrictive covenant.

Missouri law only allows restrictive covenants "in certain limited circumstances." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 610 (Mo. 2006). The restrictions must be "reasonable, meaning . . . no more restrictive than is necessary to protect the legitimate interest of the employer" and cannot be used to "protect an employer from mere competition by a former employee, but only to . . . protect the employer's trade secrets or customer contacts." *Jobe v. AAA Trailer Services, Inc.*, 544 S.W.3d 306, 311 (Mo. Ct. App. 2018).

Restrictive covenants that limit individuals "in the exercise or pursuit of their occupations, standing alone, are [unlawful] contracts in restraint of trade." *JTL Consulting, LLC v. Shanahan*, 190 S.W.3d 389, 396 (Mo. Ct. App. 2006). Nevertheless, when a defendant has adequate justification for the restrictive covenant, the restrictions may be valid. Plaintiffs have the burden to establish a lack of justification. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316–17 (Mo. 1993).

A defendant has adequate justification when it has a "legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect" and does not employ "improper means" in seeking to protect that interest. *Stehno*, 186 S.W.3d at 252. An improper means is one that uses

"threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law," *Nazeri*, 860 S.W.2d at 317. A party who seeks "to enforce a noncompetition clause must prove it has a protectable interest." *JTL Consulting, LLC*, 190 S.W.3d at 397.

Plaintiff makes a plausible claim that Aramark's enforcement of the no-hire provision constituted an improper restraint of trade. Undoubtedly, Aramark's enforcement of the no-hire provision limited Plaintiff's ability to obtain employment in her field. First, the terms of the no-hire provision limit her employment opportunities with Aramark competitors for a period of one-year post employment. Second, a Morrison manager explicitly told her she would not be considered for a position based on her prior Aramark employment due to the no-hire provision. Moreover, Plaintiff was not aware of the provision when she was hired, never agreed to abide by it, and claims she had not been employed long enough to learn any confidential or proprietary information.

Plaintiff had only worked at Aramark for five months. In that time, Aramark had not disclosed any confidential information to her that would qualify as a legitimate interest, and Aramark makes no showing of any protecting interest constituting adequate justification.

Thus, Plaintiff plausibly establishes Aramark's lack of justification in enforcing the no-hire provision as to her.

### Conclusion

For the reasons stated, Aramark's motion is DENIED.

**IT IS SO ORDERED.**

Date:  May 5, 2021                                      /s/ Greg Kays
                                                        GREG KAYS, JUDGE
                                                        UNITED STATES DISTRICT COURT